Good morning. May it please the court. My name is David Schlesinger. I represent the appellant Juan Carlos Enriquez. On its face, the Supreme Court's opinion in Ruan v. United States seems to concern itself only with the except as authorized language in Section 841A. Mr. Schlesinger, could you speak up a little bit? My apologies, Your Honor. Yeah, you have a very soft voice. As I was saying, Your Honor, the except as authorized language in 21 U.S.C. 841A appears to be the only question at issue in Ruan. But when one looks at the case in much more detail and takes a close look at Justice Alito's concurrence in judgment, which reads much more like a dissent, this case actually deals with much more profound concerns of statutory construction, particularly when one has to determine whether a particular exception in a statute is actually a quasi element or an implied element that needs to be pleaded in an indictment, much like an actually articulated essential element. Mr. Schlesinger, I'm having a hard time reading Ruan quite that broadly. It seems to me that Ruan talked about who bore the burden of proof in proving or disproving the existence of a fact. And what the statute seems to say here is to erect a rebuttable or, excuse me, affirmative defense that the government may or may not have to negate at trial, but it's buried in along with a list of almost two dozen other what I would call affirmative defenses. And why does the government have to include that in the draft of the indictment? Well, a couple of points, Your Honor. I'd refer you to page 2380 in Ruan from Justice Breyer's majority opinion. He writes, that statutory requirement, while differing from an element in some respects, is sufficiently like an element in respect to the matter at issue here as to warrant similar legal treatment. So that's where we develop the term quasi element or implied element, that it's more than just simply a burden-shifting analysis that he engages in in his majority opinion. But your appeal specifically is an attack on the drafting of the indictment. That's correct, Your Honor. And that's where I'm wondering whether Ruan goes quite that far. I mean, isn't it the office of a bill of particulars if the defendant is uncertain as to whether or not this particular affirmative defense may or may not apply, that you can move the court to ask the government to further articulate their theory of prosecution? I think that there's more required of the government in drafting an indictment than simply waiting, Your Honor, based on Ruan for a later bill of particulars. We've cited, and I know that the case law is rather skeletal and slow to develop in this area, but we have cited two published district court opinions that actually require the government in drafting indictments under Section 841A to charge the except as authorized specifically in the indictment, and essentially to plead around it and show why it doesn't apply. So, counsel, if I could just jump in because I want to follow up on that.  I know when the government gets up, they're going to point to pages 2379 and 2380 and the language where the court says, Section 885 merely absolves the government of having to allege in an indictment the inapplicability of every statutory exception. They're going to say Ruan says exactly the opposite of what you're saying and that it does not need to be alleged in an indictment. I want to know what's your response to that language in Ruan? Sure. I would point you to separate language in Justice Breyer's opinion, Your Honor, page 2380. Section 885 merely absolves the government of having to allege in an indictment the inapplicability of every statutory exception in each Controlled Substances Act prosecution. So, we're not saying that the government here in drafting the indictment would have to plead around every single one of the exceptions. And I'll refer to it as B3B because the full statutory set is quite kind of a mouthful. But here on its face, the indictment alleged that Mr. Enriquez was a pharmacy technician at Five Star and Ultimate Pharmacies in Venice. So, it would have been relatively easy and I even took a stab at trying to draft some language that the government could have put into the indictment. I'm sure they appreciate the help. I'm not usually in the business of trying to help the government, Your Honor, but I think for these purposes, I want to try to illustrate just how basic this could have been. My attempt is as an employee of Five Star and Ultimate Pharmacies, Enriquez knowingly and willfully conspired to receive payments from Sadowsky that were not for the provision of covered items or services. So, that would have been relatively easy to have done. But the question is, is the indictment constitutionally infirm for failing to allege all the elements of the crime? And that's where I'm having a hard time extending rule on. I'm also having a hard time, in light of your answer, squaring it with what the court said in rule on. We now hold that Section 841's knowingly or intentionally mens rea applies to the accept as authorized clause. This means that once a defendant meets the burden of producing evidence that his or her conduct was authorized, the government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner. To me, that speaks to burden of proof and shifting burdens once the defendant picks the defense out of the laundry list that the statute provides and then allocates to the government the obligation to prove by proof beyond a reasonable doubt that that safe harbor provision is not a safe harbor for him. I understand your concern, Your Honor. I would direct you to the essentially position that Justice Alito took in his concurrence and judgment in which he emphasized that this goes beyond simply burden-shifting concerns when accept as authorized or similar language appears in a statute. He deemed this to essentially create somewhat of a sea change. He called it a radical new course, using his exact language, in terms of how courts approach exceptions, in terms of how they approach language such as what appears in B-3-B. But don't you think there's a difference between whether or not a doctor who is authorized to write prescriptions for controlled substances versus this individual who was paid apparently commissions in addition to a salary might find a safe harbor in what amounts to a Medicare fraud case? I mean, we're dealing with two different statutory provisions, are we not? The language is different. I'd acknowledge that, Your Honor. But the principles are similar in that you have accepting language, accept as authorized in 841A, and here you have a series of exemptions, only one of which squarely on its face applies. But I guess what I'm focusing upon in the drug distribution situation is that a statute makes it illegal to distribute controlled substances, but we all know that doctors, for legitimate medical reasons, can prescribe by prescription controlled substances in order to treat recognized diseases. And it seems to me that's a world of difference from a statute that holds you liable for Medicare fraud but provides some affirmative defenses that you might be eligible for, and if you raise them, the government then has the burden to disprove them by proof beyond a reasonable doubt. I would like to answer your question, Your Honor. I would note that I would like to reserve some time. I'll give you a little time. Thank you very much, Your Honor. The key here, Your Honor, and again, I understand your concern, is that the government, in contrast to other defendants charged in Count 9, such as Rosales and Sotnikoff, was specifically alleged to be an employee. And so that immediately implicated B3B because he was receiving compensation as an employee at Five Star and Ultimate Pharmacies. So it was incumbent in our view under Ruan for that kind of specific allegation to be made in the indictment to show that his receipt of compensation from Ms. Sadovsky was, in the government's view, as should have been charged in the indictment, was not purely for... So how was he prejudiced by the lack of the allegation? I mean, he obviously knew in the indictment that he was being charged for work-related receipt of federal funds, and it seems to me that it's sort of incumbent upon him at that point, if he thinks he might qualify for this safe harbor, to raise it as a defense. I mean, is he saying I had no idea that when I was charged with Medicare fraud that there might be a safe harbor provision for me under this statute? I think your concerns, Your Honor, certainly go to what would have been considerations if the case had been tried and what would have been... I mean, the whole purpose of the indictment is to put the defendant on due process notice of what he has to meet at trial. And in this case, the fact that he was alleged to have committed the fraud within the course and scope of his employment seems to me adequate notice that he's being charged for acts that he committed while he was employed by the pharmacy. So he clearly had notice of what the government was accusing him of. I would note, Your Honor, that the one overt act that Count 9 specifically charges regarding Mr. Enriquez, which shows up as a separate violation of B1B charged in Count 12, is a receipt of payment from one of the pharmacies on April 20, 2016. That in itself, on its face, doesn't give him notice that that specific payment, which could have been for innocuous, bona fide, employment-related purposes. It didn't put him on notice that that specific overt act was for prescribed conduct. So our view, Your Honor, is that yes, I think some of the concerns you've raised go to how this case would have proceeded if it had gone to trial. But looking at just the four corners of the indictment, which this court's case law has said is all that this court looks at in this particular motion context, there simply wasn't enough for Mr. Enriquez to be on notice regarding the potential applicability of this exception, which, as we've argued, needs to be charged as a quasar or implied element. So you've argued that the indictment must plead the inapplicability of a facially applicable safe harbor, but how should facially applicable be defined? And what would trigger it? I think here, Your Honor, it's some sort of factual allegation that would fit the exception, that would bring the exception into play. And as I said here, the distinguishing allegation in the indictment was that Mr. Enriquez was an employee. Ms. Rosales and Mr. Saltnikoff were just described as marketers. They were not employees of the pharmacy. So the exception necessarily didn't apply to them. There's enough in this indictment to make the court, I think, less hesitant about expanding the rule we propose in a very, in a vast way that would be too onerous on the government. As I said, it's the charging of Mr. Enriquez as the employee that triggers this requirement. And I note that in the memorandum of disposition in Equilibrium that Judge Owens joined, the panel did have some concerns about this. So that's why we're proposing a very narrow rule. If it's clear on the face of the indictment that an exception would apply, then that's where the charging requirement comes into play. Unless my colleagues have any more questions, I'm going to stop you there, but I'm going to give you two minutes for rebuttal. Thank you so much, Your Honor. I appreciate it. Thank you. Good morning. May it please the Court. I'm Ethan Sachs on behalf of the United States. As Your Honors have been discussing with my colleague this morning, Mr. Enriquez asked this Court to stretch and read Ruan and also the anti-kickback statute in a way that no court has done before. I'd like to focus on two primary reasons why we think that request is misguided. Some of them relate to things we've been discussing this morning. The first is that Ruan dealt with the Controlled Substances Act, which, as some of Your Honors' questions got to, is a very different statute than the anti-kickback statute at issue here. The second is that, as we've also discussed, Ruan dealt with not a pleading standard for the indictment, but the burden of persuasion or proof to prove at trial, and it was a jury instruction case. So that's that first issue. I think it's most helpful to see the difference, to just look at the two statutes at issue, just look at the text of them. The Controlled Substances Act, 21 U.S.C. 841A, lays out in one provision, it says, except as authorized, it shall be unlawful for any person knowingly or intentionally, skipping a couple words, to manufacture, distribute, and perform other conducts with a controlled substance. The AKS by contract, as we've discussed this morning, is 42 U.S.C. 1320A-7B, and then little b, illegal remunerations, lays out, essentially, whoever knowingly and willfully solicits or receives any remuneration in section one, and then two, whoever knowingly and willfully offers or pays any remunerations, that's section two. And then in a whole new subsection, three, says paragraphs one and two shall not apply to, and then it lists dozens of what have been called safe harbors and are effectively, or we think are, affirmative defenses to the statute. And I just want to mention that every court, including this one, to have ever considered that question, have held or at least endorsed the principle that those are affirmative defenses. No one has suggested otherwise. That principle, that separate provisions lay out affirmative defenses, is one of the most bedrock principles we have in the criminal law. We saw an 1841 decision from the Supreme Court, Dixon saying it has always been the rule. So by 1841, it was already always the rule that affirmative defenses, that these type of provisions are affirmative defenses. That hasn't changed. We understand Mr. Enriquez has suggested that rule one was this sea change that has sort of changed that principle. One response to that is it would be quite remarkable to have done that silently. You know, this is hundreds of years of consistently applied precedent, and to overturn that consistent strand of case law silently would be truly remarkable. And we can see that it's not, and I just want to point the court's attention, and we cite this case in our brief. I apologize if I'm pronouncing it incorrectly. I think it's Chow Chun, it's from the Seventh Circuit, interpreting the FARA, the Foreign Agent Registration Act. And that statute is structured very similarly to the anti-kickback statute, and Judge St. Eve's decision for that court lays out why that principle that I've been articulating from Dixon, through McKelvey, through more recent cases, shows that those are affirmative defenses. When they're in a separate provision, defenses like that are affirmative defenses that remain the defendant's burden. If I could just quickly mention a couple of the other reasons why we think the statutes are different. One is that, as Judge Tallman, your question got to this earlier, Ruan actually mentions this, that the Controlled Substances Act, the Accept as Authorized Clause, changes what is really societally necessary and good conduct, upon which many of us rely on a daily basis for a doctor to prescribe us a controlled substance. That effectively can be, that same conduct can be criminal if unauthorized. And so that Accept as Authorized Clause is really doing a ton of work in the statute. Kickbacks don't really work that way. Kickbacks are largely in an unlawful behavior, to which there are some narrow exceptions laid out in the affirmative defenses. And just the third point on this is that the case law reflects this. The courts pre-Ruan, including this court, had treated the Accept as Authorized Clause and the Controlled Substances Act in many different ways. This court effectively treated it as an element of the statute. The Eleventh Circuit treated it as something much closer to an affirmative defense. And there were circuits in between those that sort of, you know, treated it as a quasi-element, if you will, and what the court ultimately adopted. Here, by contrast, there's no such similar history, as I've mentioned, with the anti-kickback statute. For decades, courts have held that the provisions, the safe harbors, are affirmative defenses. So we think that's really all that's necessary for this court to say that the statutes are dissimilar enough that Ruan has no bearing on this case. Counsel, this was a conditional plea case, is that right? That's correct. So, let me ask you a hypothetical. If the government took the position that the defendant's solicitation of prescriptions, let's say from nursing homes and so on, to steer work business to the pharmacy to fill them, and he was paid a commission based on the number of prescriptions that were so referred, had he simply gone around and marketed the services of the pharmacy, but was just paid his regular salary, would that be a violation of the statute under the government's view of the law? So I think the answer is yes. It still would be a case. Yes, under this circuit's case law. That, of course, hasn't been litigated or briefed in this case, but I think the answer is yes. And I will acknowledge that there is some disagreement among the courts of appeals of really how broadly to read the bona fide employment safe harbor. But I think it would be helpful to, this is not in my brief, and so I just want to mention this case in response to your question. There's a Fifth Circuit case that I think is really on point. It's unpublished. It's Jackson. It's 220 Federal Appendix 317, Fifth Circuit case from 2007. That defendant was an employee of the pharmacy. We don't dispute that he was an employee of the pharmacy, but just that's not what the kickback scheme involved. And that court said, well, sure, you have separate employment, but you have a scheme based on separate checks that qualifies. Now, I understand your hypothetical is slightly different than that because there are titles or roles of people who go out and promote a pharmacy, and we think that gets closer to the line. So I think I would, you know, not to fight the hypothetical, would need to know more facts. But I think in some cases, yes, that could still be a violation of the statute, depending on where the payment comes from. Wouldn't it be a violation if a, what do they call them, the sales reps go around and flog their pharmaceutical company's latest miracle to get doctors to prescribe them? I hesitate to say in every case, but I think generally you're right, Your Honor. We agree with you that that probably would not violate the statute. One thing that might be helpful to note is that many employers who are trying to be above board with this will write in to the agency, to the Office of the Inspector General, who will issue advisory opinions. And there are some, we haven't cited some, that say, yes, this employment arrangement would be okay, but if you did it slightly differently, we may raise concerns. And so there is a process by which an employer who's concerned, a legitimate employer concerned of reaching that line can check. One last thing I'd like to say is just, I've given the reasons why we think the two statutes are very different, but just to reinforce that even if the statutes were similar, RUAN doesn't go so far in the controlled substance of that context to change the pleading standard. It still remains upon the defendant, carries the burden of production, and then once the defendant has satisfied that burden, the government carries the burden of persuasion. That's why I read that provision out of RUAN, because that's how I read RUAN. Yes, we completely agree with that. We think it says that expressly, and we think there's no way around it. So even if the statutes were similar, which we don't think they are, but even if they were, we think RUAN wouldn't have any effect on the pleading standard at issue in this case. We ask that you refrain. Thank you very much. Thank you, Counsel. Counsel. I would like to quickly address three separate points that Mr. Sachs on behalf of the government raised. First, as we've noted in our briefing, particularly in our reply brief, much of the case law, if not all the case law, that the government relies on to contend that provisions such as Section 3B3 are pure affirmative offenses is pre-RUAN. So, again, our position is that RUAN has affected a significant change in this area. So would your position be that all 19 or however many of those statutory subsections are contained, all of those are quasi-elements, depending on the facts of a particular? Depending on what is charged in the indictment, yes, Your Honor. But, again, as I stated earlier, the narrow rule we're proposing doesn't require the government in drafting an indictment to plead around every single one of those exceptions. It's only if it alleges facts sufficient to show that. I mean, that's a pretty broad extension of RUAN. I don't think so, Your Honor, to the extent that, again, we're just dealing with the face of the indictment and whether there are sufficient facts alleged to implicate one of those exceptions. And here, because the, as I mentioned earlier, because the indictment specifically charged, specifically alleged that Mr. Enriquez was an employee of the two pharmacies, that brought B3B into play. Second, regarding Mr. Sachs' contention that the Supreme Court in RUAN wouldn't have sub silentio, essentially created this new approach, I refer the court again to Justice Alito's concurrence in the judgment, 2383. He writes, in these cases, however, the court recognizes a new hybrid that has some characteristics of an element and some characteristics of an affirmative defense. The consequences of this innovation are hard to foresee, but the result may well be confusion and disruption. The now rule that we propose, I think, helps to alleviate some of that confusion and disruption. But otherwise, I think that Justice Alito's analysis is correct. Oftentimes, these concurrences and judgments that read as dissents often foresee significant changes. I would refer the court, for example, to Justice O'Connor's dissent in Apprendi, which correctly foresaw that mandatory determinate sentencing schemes would later be invalidated. And, indeed, that happened, including with the U.S. sentencing guidelines. So I think that there is significant analysis in Justice Alito's concurrence in judgment from which this court can infer that, indeed, RUAN goes beyond just a simple matter of interpreting the accept as authorized clause in Section 841A. I see that I'm over time. Unless the court has any further questions, I'd be pleased to submit. Thank you very much, counsel. Thank you. Thank you to both of you for your briefing and argument in this very interesting case. This matter is submitted, and we'll move on to the final case on calendar today.
judges: TALLMAN, OWENS, Montenegro